UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Thomas Schiffler, | Civ. No. 07-4303 (JRT/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Home Depot USA, Inc., et al. | |
| Defendants. | |

This matter came before the undersigned United States Magistrate Judge upon Defendant's Motion for Partial Summary Judgment. [Docket No. 60]. The motion was referred to the Magistrate Judge by Hon. John R. Tunheim for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. (Order [Docket No. 70]). The Court held a hearing on the motions on December 17, 2012. For reasons outlined below, the Court recommends that Defendant's Motion for Partial Summary Judgment, [Docket No. 60], be **GRANTED**.

I. BACKGROUND

On October 17, 2002, Thomas Schiffler (Plaintiff)[1] fell when a 20-foot Type 3 Werner aluminum extension latter, which he purchased at a store operated by Home Depot U.S.A., Inc. (Defendant),[2] collapsed. (Joint Statement of the Case [Docket No. 30] at 3, ¶ 6). Plaintiff claims that Defendant negligently "designed, tested, promoted, assembled, manufactured,

---

[1] This suit was brought by both Thomas Schiffler and his wife Brittany Schiffler (Ms. Schiffler). (Summons & Compl. [Docket No. 1-1] at 2). However, in their filings regarding the current motion, Plaintiffs withdraw their loss of consortium claim, which was the only claim brought by Brittany Schiffler. See Part II.A, infra. Therefore, in this Report and Recommendation any references to Plaintiff are to Thomas Schiffler.
[2] Other named defendants were Werner Co., Werner Ladder Co., and three unnamed parties: John Doe, Richard Roe, and the XYZ entity. (Summons & Compl. [Docket No. 1-1] at 2). Plaintiff dismissed claims against Werner Company and Werner Ladder Company. (Order [Docket No. 27]). This motion, however, is brought only by Defendant Home Depot. Therefore, in this Report and Recommendation any references to Defendant are to Home Depot.

1

advertised, distributed and sold said ladder." (Id.). Plaintiff believes the accident resulted in both back injuries and head injuries, the latter including a concussion and memory loss. (Answer to Interrogs. Nos. 6-7, Decl. Bryant Ex. 1 [Docket No. 69-1], at 3-4). Plaintiff further alleges that his injuries resulted from Defendant's negligence, and that he requires ongoing medical care and has lost time from work as a result of his injuries. (Joint Statement of the Case [Docket No. 30] at 3, ¶ 6). Defendant denies any liability, and challenges Plaintiff's damage claims, "both as to the extent of any injury, if any, and the extent of any damages from said alleged injury." (Id.).

On September 6, 2011, the District Court ordered that Defendants Werner Company and Werner Ladder Company be dismissed without prejudice. (Order [Docket No. 27]). On September 22, 2011, this Court issued its initial Pretrial Order, [Docket No. 34]; the Court amended that order on April 4, 2012, and set the following deadlines:

- Plaintiff's expert disclosures due May 15, 2012;
- Defendant's expert disclosures due June 15, 2012;[3]
- Discovery period, including deadline for expert depositions, ends on August 1, 2012;[4]
- Non-dispositive motions deadline of September 1, 2012;
- Dispositive motions deadline of October 1, 2012; responses due October 22, 2012; replies due November 5, 2012;
- Trial-ready date of February 1, 2013.

(Am. Pretrial Order [Docket No. 52]).

Defendants brought this Motion for Partial Summary Judgment, [Docket No. 60], on November 1, 2012. The Court held a hearing on the motion on December 17, 2012.

## II. DISCUSSION

Defendant raises six issues in its motion for partial summary judgment. However, five of those issues are waived by Plaintiff. (See Part II.A, infra). As a result of these waivers, only one issue remains before the Court: whether Defendant is entitled to summary judgment on

---

[3] This deadline was extended to July 15, 2012. (Order [Docket No. 55]).
[4] The deadline for expert depositions was extended three times: first to September 15, 2012, (Order [Docket No. 57]); then to October 15, 2012, (Order [Docket No. 59]); and finally to October 18, 2012, (Order [Docket No. 67]).

2

Plaintiff's head injury claims because Plaintiff has failed to make the disclosures that are required for presentation of expert testimony.

### A. Waived Claims

In their Memorandum, and on the record at the December 17, 2012, hearing, Plaintiff agreed to voluntarily dismiss the following five (5) claims: (1) his claim for defective or inadequate instructions or warnings; (2) his manufacturing defect claim; (3) his express warranty claim; (4) his implied warranty claim, to the extent not merged into the legal doctrine of design defect; and (5) Ms. Schiffler's claim for loss of consortium. (Pls.' Mem. Opp. Mot. Summ. J. [Docket No. 68] at 1-2 (footnotes added)).

Consequently, of the six (6) issues originally presented in Defendant's Motion for Partial Summary Judgment, only one (1) remains, with three parts: (1) was Plaintiff required to make expert disclosures concerning Dr. David Ketroser and Dr. Shelly Larson-Peters, whom Plaintiff intends to call as witnesses regarding head injuries; (2) if expert disclosures were required, should the Court exclude the testimony of Dr. Ketroser and Dr. Larson-Peters because Plaintiff failed to make the necessary disclosures; and (3) if that testimony is excluded, is Defendant entitled to summary judgment as to Plaintiff's head injury claims?

### B. Facts

The Court described in detail in its Amended Pretrial Order the procedure the parties were to follow regarding expert disclosures:

> That within the foregoing period allotted for discovery, but no later than the dates set forth below, the parties shall retain and disclose to opposing counsel all persons they intend to call as expert witnesses at trial. Each party's disclosure shall identify each expert and state the subject matter on which the expert is expected to testify. The disclosure shall be accompanied by a written report prepared and signed by the expert witness. As required by Rule 26(a)(2)(B), Federal Rules of Civil Procedure, the report shall contain:

      a. The qualifications of the witness, including a list of all publications authored by the witness within the preceding 10 years;
      b. The compensation to be paid for the study and testimony;
      c  A listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years;
      d. A complete statement of all opinions to be expressed and the basis and reasons therefor;
      e. The data or other information considered by the witness in forming the opinions; and
      f. Any exhibits to be used as a summary of or support for the opinions.

([Docket No. 52], at 3). That order also required that Plaintiff make its expert disclosures no later than May 15, 2012. (Id. at 4).

On May 14, Plaintiff sent two (2) letters to Defendant providing notice of the experts that Plaintiff intended to use at trial. The first letter identified four (4) medical experts, including Dr. David Ketroser (Dr. Ketroser). (Decl. Thornsjo, Ex. 5 [Docket No. 62-1], at 65). Enclosed with the letter was a copy of Dr. Ketroser's CV. (Id. at 73-74). A second letter, also dated May 14, 2012, stated that Plaintiff had been seen recently by Dr. Shelly Larson-Peters (Dr. Larson-Peters). (Decl. Thronsjo, Ex. 6 [Docket No. 62-1], at 78). That letter stated that the Plaintiff would provide Defendant with records of that visit and a copy of Dr. Larson-Peters' CV. (Id.). The dispute in this motion concerns Dr. Ketroser and Dr. Larson-Peters.

**1. Dr. Ketroser**

The materials presented to the Court contain no evidence that Dr. Ketroser has ever seen or treated Plaintiff. On May 29, 2012, Defendant's counsel contacted Dr. Ketroser, providing the authorization for release of medical records and asking for records of his treatment of Plaintiff. (Decl. Cleveland, Ex. 9 [Docket No. 73-1], at 47. On May 31, 2012, Dr. Ketroser communicated, both verbally over the telephone and via signed facsimile, that he had no records of any treatment with Plaintiff. (Decl. Cleveland [Docket No. 73], at 2, ¶ 11 (telephone); Ex. 10 [Docket No. 73-1], at 50 (fax)). Plaintiff was deposed on June 7, 2012. (Decl. Thornsjo, Ex. 1

4

[Docket No. 62-1], at 1-21). During that deposition, Plaintiff was asked whether he had "ever seen a physician by the name of Dr. David Ketroser." (Dep. Schiffler 131:16-17, Decl. Thomsjo, Ex. 1 [Docket No. 62-1], at 21). Plaintiff responded, "I don't recall that name." (Id. at 131:18). In October 2012, Defendant again sought to discover any relevant information regarding Plaintiff's treatment by Dr. Ketroser, first by U.S. mail on October 18, 2012, with a follow-up by email. (Decl. Cleveland, Ex. 11 [Docket No. 73-1], at 52-54 (mail); Ex. 13 [Docket No. 73-1], at 58-59). Defendant states that on October 26, 2012, Dr. Ketroser confirmed via telephone, but would not confirm in writing, that "he had never heard of, seen, or examined" Plaintiff. (Decl. Cleveland [Docket No. 73], at 3, ¶ 16). During the hearing on December 17, 2012, Plaintiff's counsel represented that it was his "understanding" that Plaintiff had seen Dr. Ketroser. However, assumptions and mere argument of counsel are not evidence. Plaintiff has submitted no *evidence*, as required by Fed. R. Civ. P. 56(c), to show that he has ever been seen or treated by Dr. Ketroser.

**2. Dr. Larson-Peters**

On the present record, it appears as if Dr. Larson-Peters saw Plaintiff only once: on May 10, 2012. On May 22, 2012, Plaintiff provided Defendant with a copy of the record of Plaintiff's office visit with Dr. Larson-Peters. (Decl. Bryan, Ex. 7 [Docket No. 69-1], at 56-60). Defendant followed up again in October, and was told by telephone on October 26, 2012, that there were no records of visits with Dr. Larson-Peters other than the previously released May 10, 2012, visit. (Decl. Cleveland [Docket No. 73], at 3, ¶ 17). Defendant states that it never received the promised copy of Dr. Larson-Peters' CV. (Def.'s Mem. Supp. Mot. Summ. J. [Docket No. 61], at 24). Plaintiff has submitted no evidence, as required by Fed. R. Civ. P.

5

56(c), to show that he has ever seen or been treated by Dr. Larson-Peters on any date other than May 10, 2012.

   **C. Standard of Review**

Summary judgment is appropriate only when the evidence demonstrates that there are no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable party could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of bringing forward sufficient admissible evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Mirax Chem Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). However, the nonmoving party may not rest on mere allegations or denials in its pleadings, but must set forth specific admissible evidence-based facts showing the existence of a genuine issue. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). The movant is entitled to summary judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." Celotex, 477 U.S. at 322 (citing Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact . . . as required by Rule 56(c), the court may: . . . (3) grant summary judgment if the motion and supporting materials – including the

facts considered undisputed – show that the movant is entitled to it"). No genuine issue of material fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

### D. Discussion

**1. Plaintiff was required to make expert disclosures for both Dr. Ketroser and Dr. Larson-Peters.**

Plaintiff alleges that the accident on October 17, 2002, caused head injuries including a concussion and memory loss. (Answer to Interrogs. Nos. 6-7, Decl. Bryant Ex. 1 [Docket No. 69-1], at 3-4). These are not the sort of simple injuries that are within the common knowledge of a lay jury. See Turner v. Iowa Fire Equip. Co., 229 F.3d 1202, 1210 (8th Cir. 2000) ("A causal connection between an event and an injury may be inferred in cases in which a visible injury or sudden onset of an injury occurs."). Rather, the injuries that Plaintiff describes are more "sophisticated." Irish v. U.S. Dep't of Justice, Civ. No. 11-2703 (MJD/JJK), 2013 U.S. Dist. LEXIS 16766, at *22 (D. Minn. Jan. 3, 2013) (Keyes, M.J.) ("Plaintiff's medical condition of short-term memory loss was sophisticated."). "When an injury is sophisticated, proof of causation generally must be established by expert testimony." Robinson v. Hager, 292 F.3d 560, 564 (8th Cir. 2002); Irish, 2013 U.S. Dist. LEXIS 16766, at *21 (quoting Robinson).[5] Thus, if Plaintiff is to make a prima facie showing that his alleged head injuries were caused by his fall on October 17, 2002, he must provide expert testimony regarding causation. At the hearing, Plaintiff's counsel represented that he intended to call Dr. Ketroser and Dr. Larson-Peters as

---

[5] See also Baycol Prods. Litig., 596 F.3d 884, 889 (8th Cir. 2010) ("To succeed in his strict liability and negligence claims, [plaintiff] has the burden of proving medical causation through the use of a medical expert."); Alberson v. Norris, 458 F.3d 762, 765-66 (8th Cir. 2006) (for sophisticated medical condition "expert testimony is required to show proof of causation"); Turner, 229 F.3d at 1210 ("However, when the injury is a sophisticated one, *i.e.*, requiring surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within the realm of lay understanding and must be established through expert testimony.")

7

expert witnesses who would indeed be offered to testify as to causation related to Plaintiff's alleged head injuries.

However, in opposition to the present motion for partial summary judgment, Plaintiff has presented none of the requisite expert evidence to show that his alleged head injuries were caused by his fall on October 17, 2012. Instead, Plaintiff has merely provided Defendant with (1) a letter stating that Dr. Ketroser was one of the medical experts whose testimony he intended to offer at trial, accompanied by Dr. Ketroser's CV; and (2) a second letter stating that that he had been seen by Dr. Larson-Peters. See Part II.B, supra. Plaintiff has not disclosed to Defendant, nor offered into evidence in opposition to the motion for partial summary judgment, any of the expert opinion disclosures required by either Fed. R. Civ. P. 26(a)(2)(A), 26(a)(2)(B), or 26(a)(2)(C).

In response to the motion, Plaintiff argues that the Court's Amended Pretrial Order, [Docket No. 52], does not require expert reports or other opinion disclosures. He asserts that both Dr. Ketroser and Dr. Larson-Peters are "treating physicians," for whom such disclosures are not required. (Pl.'s Mem. Opp. Mot. Summ. J. [Docket No. 68] at 3). This argument misses the point given the current procedural posture of the case.

First, the record now before the Court belies Plaintiff's assertion that Dr. Ketroser and Dr. Larson-Peters were "treating physicians." The evidence in the record shows that Dr. Ketroser has never seen or treated Plaintiff, and that Dr. Larson-Peters has seen Plaintiff only once. See Part II.B.1-2, supra. Second, and more to the point, the relevant question, given the motion for partial summary judgment now before the Court, is not whether a particular doctor is a "treating physician," but rather what that doctor is expected to testify to. See Cason v. Morisseau, Civ. No. 06-4494 (DSD/JJG), 2008 U.S. Dist. LEXIS 51, at *4-5 n.2 (D. Minn. Jan.

2, 2008) (Doty, J.) (finding a failure to disclose experts where plaintiff disclosed the identity of three treating physicians "but failed to submit expert witness disclosures pursuant to Rule 26(a)(2)(B) that would enable these treating physicians to comment on anything beyond the scope of treatment, observation and diagnosis").

With regard to Dr. Ketroser, there is no question that the Amended Pretrial Order required Plaintiff to make Rule 26(a)(2)(B) disclosures no later than May 15, 2012. (Am. Pretrial Order [Docket No. 52], at 3-4). Rule 26(a)(2)(B) applies when a witness is "retained or specially employed to provide expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Here, Plaintiff's counsel acknowledged at the motion hearing that he himself referred Plaintiff to Dr. Ketroser. The fact that Dr. Ketroser has never seen or treated Plaintiff, demonstrates that Dr. Ketroser is precisely the sort of witness that Rule 26(a)(2)(B) was meant to address. Because the Amended Pretrial Order expressly required that parties make their Rule 26(a)(2)(B) disclosures no later than May 15, 2012, Plaintiff's failure to do so constitutes a violation of a Court order.

With regard to Dr. Larson-Peters, the issue is only slightly more complicated. Because she has seen Plaintiff, he could call her as a *fact witness* if her testimony arises from her observations on May 10, 2012, or reasonable inferences therefrom. However, should she provide any further testimony Dr. Larson-Peters could only do so as an *expert witness*. See, e.g., In re Levaquin Prods. Liab. Litig., MDL No. 08-1943 (JRT), 2012 U.S. Dist. LEXIS 116088, at *3 (D. Minn. Aug. 17, 2012) ("To the extent that a treating physician is providing testimony about causation and prognosis **not** based on their personal knowledge and observations **obtained during the course of care and treatment**, that physician should be treated as an expert witness, subject to all appropriate disclosures" (emphasis in original)). Thus, in regard to Dr. Larson-Peters and in light of the purpose for calling Dr. Larson-Peters beyond merely testifying about

9

the particulars of her single office visit with Plaintiff, as acknowledged by Plaintiff's counsel, Rule 26(a)(2)(B) would apply. In addition, at a minimum, Rule 26(a)(2)(C) [6] would also require disclosure of Dr. Larson-Peters' opinions to Defendant:

> Rule 26(a)(2)(C) was added to mandate summary disclosures of the opinions to be offered by experts who are not required to produce [written] reports under 26(a)(2)(B) and of the facts supporting their opinions. Treating physicians are specifically discussed in the 2010 Advisory Committee Notes as being one of the categories of expert witnesses that the new amendment was intended to address.

Perdomo v. United States, 2012 U.S. Dist. LEXIS 81017 at *3 (E.D. La. June 11, 2012); see also Coleman v. Am. Family Mut. Ins. Co., 274 F.R.D. 641, 645 (N.D. Ill. 2011) ("[T]he amendment to Rule 26 . . . appears to speak directly to experts, such as treating physicians, whose testimony often blurs the line between fact and opinion."). It is undisputed that Plaintiff has failed to make any of the required disclosures as to Dr. Larson-Peters' opinions under either Rule 26(a)(2)(B) or Rule 26(a)(2)(C).

### 2. Whether exclusion is the appropriate sanction for Plaintiff's failure to make expert disclosures.

The Defendant's motion for partial summary judgment is, at its core, premised on the argument that there is no required expert evidence to create a genuine dispute of material fact as to the issue of causation related to Plaintiff's alleged heard injuries, because Plaintiff has never made any of the expert disclosures required by both the scheduling order in the case and either Fed. R. Civ. P. 26(a)(2)(B) or 26(a)(2)(C). Defendant also argues that should Plaintiff seek to subsequently offer untimely expert opinions by Dr. Ketroser and Dr. Larson-Peters on the issue of causation related to Plaintiff's alleged head injuries, as a sanction for failing to comply with this Court's scheduling order provisions for the disclosure of expert opinions, any such untimely

---

[6] For an expert witness not "retained or specially employed," the party need not make full Rule 26(a)(2)(B) disclosures, but nevertheless must still make disclosures stating the subject matter to which the witness is expected to testify and provide "a summary of the facts and opinions to which the witnesses is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

disclosures should be excluded by the Court; which, consequently, would still leave the Plaintiff without any showing of the expert evidence required to establish a prima facie case in regard to his alleged head injuries.

Plaintiff's only argument presented to the Court, other than his incorrect assertion that disclosure of expert opinions was not required by the scheduling order, was that exclusion of expert opinions was too drastic a sanction for his failure to disclose expert opinions within the timeline set by the applicable scheduling order. However, on the subject of causation of Plaintiff's head injuries, Plaintiff did not and has not to date disclosed any opinions whatsoever that are held by and to which either Dr. Ketroser or Dr. Larson-Peters would testify at trial.

Accordingly, since Plaintiff has never disclosed any expert opinion on the subject of causation as it relates to the Plaintiff's alleged head injuries, there is nothing for this Court to consider for possible exclusion as a sanction for non-compliance with the scheduling order. The only germane issue is whether, on the record now before this Court, the Plaintiff has, by submission of competent admissible evidence, demonstrated a genuine issue of material fact exists on the essential element of causation regarding that part of his claim related to his alleged head injuries.

Therefore, on the present record, the Defendant's request that the Court exclude any opinion testimony of Dr. Ketroser and Dr. Larson-Peters is a moot issue.

**3. Summary Judgment is warranted under Rule 56(e) because Plaintiff has failed to introduce evidence necessary to show a genuine dispute of material fact.**

Under Fed. R. Civ. P. 56(e), summary judgment is warranted "[i]f a party fails to properly support an assertion of fact . . . as required by Rule 56(c)." Fed. R. Civ. P. 56(e)(3). Thus, summary judgment is appropriate where, as in the present case, an expert opinion is required to establish an element of a plaintiff's case and the plaintiff fails to produce such an

11

opinion.  See, e.g., Steward v. Wells Fargo Bank, N.A., Civ. No. 10-469 (MJD/FLN), 2011 U.S. Dist. LEXIS 83258, at *15-17 (D. Minn. June 10, 2011).

Plaintiff has alleged that he sustained a head injury in the accident on October 17, 2002, resulting in a concussion and memory loss.  In order to establish causation, such a claim must be supported by expert opinion testimony.  See Part II.D.1, supra.  However, despite the fact that discovery in his case terminated on August 1, 2012, (see Am. Pretrial Order [Docket No. 52], at 2), and despite the fact that he was on notice of Defendant's motion for partial summary judgment (a portion of which was premised on the absence of any expert opinions to support his head injury claims), Plaintiff to date has still not produced any expert opinion evidence that would tend to demonstrate that any symptoms suffered by Plaintiff were caused by head injuries sustained in the accident on October 17, 2002.  In fact, when asked at the December 17, 2012, hearing what opinions Dr. Ketroser and Dr. Larson-Peters held which they might provide on the issue of causation should they be called to testify, Plaintiff's counsel acknowledged that he did not know what opinions would be given at trial.

As explained in Thulin v. EMC Mortg. Corp., No. 06-3514 (RHK/JSM), 2007 U.S. Dist. LEXIS 76864 (D. Minn. Oct. 16, 2007) (Kyle, J.), Plaintiff cannot oppose a motion for summary judgment by claiming that, although no genuine issue of material fact exists at present, some subsequent discovery might create a fact dispute:

> Nor can [plaintiff] overcome [defendant's summary judgment] motion by baldly asserting that he intends to produce witnesses and evidence at trial that will clearly and convincingly demonstrate [his claims].  The purpose of summary judgment is to pierce the allegations in the pleadings and determine, based on the evidence, whether there is a genuine issue of material fact for trial.  . . . Here, [plaintiff] has proffered nothing more than unsupported allegations about how . . . witnesses will testify at trial.  That is simply not enough.

Id. at *7-9 (internal quotations, citations, and edits omitted).[7] Moreover, Plaintiff has not sought, via a Rule 56(d) motion, additional time to demonstrate the facts necessary to oppose summary judgment. See, e.g., Carman v. McDonnell Douglas Corp., 114 F.3d 790, 792 (8th Cir. 1997) (no abuse of discretion where district court held that plaintiff's "failure to file a Rule 56(f)[8] affidavit explaining why more discovery was needed defeats any argument that summary judgment was premature"). Simply put, Plaintiff has done nothing to convince this court that partial summary judgment as to the head injury claims is not appropriate at this time. See Prody v. City of Anoka, Civ. No. 10-4968 (JRT/AJB), U.S. Dist. LEXIS 88616, at *17 n.7 (D. Minn. June 27, 2012) (Tunheim, J.) (delay in summary judgment warranted only when party seeking delay identifies specific facts that further discovery might uncover and articulates why those facts make summary judgment improper).

On the present record, Plaintiff has offered absolutely no competent, admissible expert opinion evidence to create or demonstrate a genuine issue of material fact on an essential element (i.e., causation) of his claim related to alleged head injuries. The Plaintiff has failed to comply with Fed. R. Civ. P. 56(c), and therefore, in the absence of a genuine dispute of material fact on an essential element of Plaintiff's claims, Defendant is entitled to partial summary judgment on that claim. Celotex, 477 U.S. at 322; Fed. R. Civ. P. 56(e).

---

[7] See also Greene v. Gassman, Civ. No. 11-618 (PJS/TNL), 2012 U.S. Dist. LEXIS 29192, at *___ (D. Minn. Mar. 6, 2012) (Schiltz, J.) (summary judgment not premature where, nearly six months after defendants moved for summary judgment, plaintiff "does not dispute the accuracy or authenticity of the evidence submitted by the [defendants] in support of their summary-judgment motion," and has not identified the specific evidence that would defend against the motion).
[8] Subsequently recodified as Rule 56(d).

**III.    CONCLUSION**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion for Partial Summary Judgment, [Docket No. 60], be **GRANTED** as to (1) Plaintiff's claim for defective or inadequate instructions or warnings; (2) Plaintiff's manufacturing defect claim; (3) Plaintiff's express warranty claim; (4) Plaintiff's implied warranty claim, to the extent not merged into the legal doctrine of design defect; and (5) Ms. Schiffler's claim for loss of consortium; each of which Plaintiff and Ms. Schiffler have waived on the record.

2. Defendant's Motion for Partial Summary Judgment, [Docket No. 60], be **GRANTED** as to Plaintiff's head injury claims.

Dated: February 15, 2013                         s/Leo I. Brisbois
                                                 LEO I. BRISBOIS
                                                 United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by March 1, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.